

**FILED**

Oct 12 2018, 6:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy Karozos
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.S., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner* | October 12, 2018 <br><br> Court of Appeals Case No. <br> 18A-JV-1049 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Gary Chavers, Judge Pro Tempore <br><br> Trial Court Cause Nos. <br> 49D09-1711-JD-1623 <br> 49D09-1710-JD-1472 |

**Crone, Judge.**

## Case Summary

[1]     J.S. appeals his placement in the Indiana Department of Correction ("DOC")
following his admission to delinquent acts that would have amounted to level 6
felony receiving stolen auto parts, class A misdemeanor dangerous possession

of a firearm, and class A misdemeanor theft if committed by an adult. Finding that the trial court acted within its discretion in ordering J.S.'s placement in the DOC, we affirm.

## Facts and Procedural History

[2] In 2017, fifteen-year-old J.S. lived with his mother in an Indianapolis apartment. He had a history of disciplinary incidents at school, generally involving fighting and resulting in suspension. He also used marijuana. On October 7, 2017, he attended a party at which firearms were present. Eyewitnesses reported seeing him fire gunshots into the air. A week later, police discovered J.S. sleeping in the front seat of a vehicle identified as one recently stolen in an armed carjacking. He told police that he knew that the vehicle had been stolen and that he and two friends had driven it around, parked it, and fallen asleep. He reported that he had won the vehicle in a dice game, but also said that it had been given to him. Police discovered a loaded handgun in plain view in the front passenger's side floor area. On October 18, 2017, under cause number 49D09-1710-JD-1472 ("Cause 1472"), the State filed a petition alleging that J.S. had committed acts amounting to level 6 felony receiving stolen auto parts and class A misdemeanor criminal trespass if committed by an adult. J.S. was placed on electronic monitoring pending his adjudication.

[3] Three weeks later, police responded to a report of an armed robbery involving two armed juvenile boys who stole a woman's purse, cell phone, and car keys and fled on foot to a nearby apartment. According to a predispositional report

filed by the local probation department, a maintenance man observed the boys as they ran and identified one of the boys as J.S. J.S. said that he was inside his apartment when the boys (his friends) asked to enter. He allowed them to enter and stash a firearm and other contraband inside the apartment. Police recovered the firearm from his bedroom, and ballistics testing showed a match with bullet casings found at the scene of the October 7 party. Under cause number 49D09-1711-JD-1623 ("Cause 1623"), the State filed a petition alleging that J.S. had committed acts amounting to level 3 felony armed robbery, level 6 felony pointing a firearm, class A misdemeanor carrying a handgun without a license, and class A misdemeanor theft if committed by an adult. The State also filed a notice of electronic monitoring violation, based on J.S.'s allowing individuals into his home and possessing a firearm.

[4] At the end of 2017, J.S.'s mother found an apartment in another school district and enrolled J.S. for classes beginning in January 2018. During January, J.S. was written up for skipping classes and received one disciplinary referral for disruption on the bus.

[5] In February 2018, under cause number 49D09-1802-JD-178 ("Cause 178"), stemming from the incident at the October 7 party, the State filed a petition alleging that J.S. had committed acts amounting to level 5 felony criminal recklessness, class A misdemeanor dangerous possession of a firearm, and class A misdemeanor carrying a handgun without a license if committed by an adult. The State removed J.S. from his home and placed him in pretrial detention, during which time he accumulated several incident reports.

[6] J.S. entered into an admission agreement, pursuant to which he admitted to acts amounting to receiving stolen auto parts (Cause 1472), class A misdemeanor dangerous possession of a firearm (Cause 1623), and class A misdemeanor theft (Cause 1623) if committed by an adult. In exchange, the State agreed to dismiss the remaining counts in Causes 1472 and 1623 and all counts in Cause 178. The agreement specified that the disposition would be left open to the trial court's discretion, and the trial court ordered a psychological evaluation.

[7] At the dispositional hearing, the trial court admitted the psychologist's report, in which the doctor expressed concern with J.S.'s antisocial behavior, peer associations, possession of firearms, and drug abuse. He also considered J.S.'s risk of recidivism to be moderate to high. Notwithstanding, the doctor recommended that if the court were to return J.S. to the community, he should be afforded close supervision, electronic monitoring, drug abuse screening, and frequent assessment and oversight from the probation department. Appellant's App. Vol. 2 at 154. The public defender agency submitted a proposed plan for returning J.S. home with supervision from his mother, a neighbor, and a cousin and for court-ordered services, monitoring, and curfew. *Id*. at 135-36. The probation department submitted its predispositional report and testimony recommending that J.S. be placed in the DOC and be subject to a no-contact order concerning certain friends and victims. The trial court issued a dispositional order placing J.S. in the DOC. J.S. now appeals his disposition. Additional facts will be provided as necessary.

# Discussion and Decision

[8] J.S. contends that the trial court abused its discretion in placing him in the DOC. The disposition of a juvenile adjudicated a delinquent is a matter committed to the trial court's discretion, subject to the statutory considerations of the child's welfare, community safety, and the policy favoring the least harsh disposition. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). We review a trial court's disposition for an abuse of discretion, which occurs if its decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable inferences that may be drawn therefrom. *Id.* In determining whether a trial court has abused its discretion, we neither reweigh evidence nor judge witness credibility. *Ripps v. State*, 968 N.E.2d 323, 326 (Ind. Ct. App. 2014).

[9] Juvenile court proceedings are civil, not criminal, in nature. *T.K. v. State*, 899 N.E.2d 686, 687-88 (Ind. Ct. App. 2009). "[T]he goal of the juvenile process is rehabilitation so that the youth will not become a criminal as an adult." *R.H.*, 937 N.E.2d at 388. As such, juvenile courts have a variety of placement choices. *Id.* Indiana Code Section 31-37-18-6 reads,

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> (A) in the least restrictive (most family like) and most appropriate setting available; and

(B) close to the parents' home, consistent with the best interest and special needs of the child;

(2) least interferes with family autonomy;

(3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[10] Indiana Code Section 31-37-18-9(a)(5) requires the trial court to state its reasons for the disposition chosen. This involves the trial court's issuance of written findings and conclusions concerning the child's care, treatment, rehabilitation, or placement; parental participation in the plan; efforts made to prevent the child's removal from the parent; family services offered; and the court's reasons for its disposition. Ind. Code § 31-37-18-9(a)(1)-(5). Here, the trial court issued findings indicating its consideration of the statutory factors and its reasons for ordering placement in the DOC. These include the seriousness of the circumstances surrounding J.S.'s offenses, that J.S. was on electronic monitoring when he committed the offenses in Cause 1623, that he was deemed a moderate to high risk for continued delinquency recidivism, that he needs services that cannot be provided in the home, and that he had an onslaught of referrals, all of which were firearms-related. Appellant's App. Vol. 2 at 24-25.

[11] J.S. challenges the trial court's finding that "[a]ll three referrals before the court were firearms related." *Id*. at 25. He claims that the presence and/or involvement of a firearm was factually determined only as to Cause 1623, in which he confessed, as part of his admission agreement, to knowing that a firearm used in an armed robbery was present in his bedroom. He therefore maintains that the trial court could not properly consider the presence or involvement of a firearm in the remaining referrals against him. In addressing this argument, we first note that J.S. did not object when the prosecutor referenced his arrest in another case involving a gun while his first gun-related case was pending. Tr. Vol. 2 at 17-18. Nor did he object or seek a clarification when the trial court referenced his "culture of guns," his admission that he had driven the stolen vehicle with a handgun located under the seat, or the presence of guns at the October party in connection with his penchant for being around firearms. *See id*. at 23-24. Instead, he now appears to assert that when a trial court is considering placement options for a juvenile offender, it may not consider evidence beyond that which formed the factual basis for the juvenile's agreed admissions. We disagree.

[12] We find juvenile dispositional proceedings such as these to be analogous to sentencing hearings after an open plea agreement in adult court, where the trial court considers a broad range of information in evaluating aggravating and mitigating circumstances relevant to sentencing. In *Bethea v. State*, 983 N.E.2d 1134, 1144 (Ind. 2013), the defendant bargained for the dismissal of seven of the nine counts against him, and the plea agreement did not limit the evidence that

the State or the defendant could offer as aggravating or mitigating factors during sentencing. In sentencing Bethea, the trial court cited as an aggravating factor the injury to the victim, where the injury was an element of a burglary charge dismissed pursuant to Bethea's plea agreement. *Id*. at 1142. Although *Bethea* involved a post-conviction claim of ineffective assistance of appellate counsel, the claim involved counsel's allegedly deficient performance in failing to cogently challenge the trial court's consideration of aggravating factors pertaining to counts that were dismissed pursuant to Bethea's plea agreement. *Id*. at 1139, 1142. In analyzing the scope of information proper for consideration as aggravators and mitigators, the *Bethea* court explained that a plea agreement is a contract negotiated by the parties, and as such, the parties can agree to limit or otherwise exclude what may be considered by the trial court during sentencing. Id. at 1146. Unless the parties include language limiting the evidence that the trial court may consider during sentencing, the trial court may consider facts and circumstances surrounding the case, even those pertaining to underlying charges that were dismissed. *Id*. at 1144-45. The *Bethea* court held that the trial court did not err in giving significant consideration to the facts relating to dismissed charges.[1] *Id*. at 1145.

[13] Similarly, here, J.S. and the State entered into an admission agreement, functionally analogous to a plea agreement, in which J.S.'s

---

[1] Thus, in the context of analyzing appellate counsel's performance, counsel could not be said to have performed deficiently on that basis. *Bethea*, 983 N.E.2d at 1146.

disposition/placement was left open to the trial court's discretion. *See* Appellant's App. Vol. 3 at 3-5. The agreement did not include any language limiting the information that the State or J.S. could offer as factors relevant to the trial court's determination regarding placement; rather, it simply limited the delinquent acts for which the court could enter true findings. We find *Bethea* instructive and conclude that the trial court could properly consider the overall narrative of the referrals against J.S. when evaluating what placement would best promote community safety and J.S.'s best interests. These narratives, memorialized and included in the probation department's predispositional report and incorporated by reference by the trial court, include eyewitness accounts of J.S. firing a handgun into the air at a party, a maintenance man's identification of J.S. as one of the boys running from the scene of an armed robbery with a black object in his hand, and officers' discovery of a handgun in plain view in a stolen vehicle which J.S. had admitted to driving. This information implicated public safety as well as J.S.'s best interests, and the trial court did not err in considering it.

[14] As evidence favoring family placement, J.S. cites his mother's proactive steps in moving him to a new high school during the pendency of the juvenile proceedings. The record shows that in his first month at his new school, J.S. had several disciplinary entries for skipping classes and an entry for disruption/disrespect on the bus. The court considered the positive steps taken by J.S.'s mother but ultimately found that the educational opportunities available within the DOC would offer a level of structure that would better

promote J.S.'s educational interests. We see nothing wrong with this assessment.

[15] Finally, to the extent J.S. suggests that the trial court overlooked his lack of a prior juvenile record and thus failed to consider the least harsh disposition available, we disagree. The court specifically indicated its consideration of J.S.'s lack of criminal record but went on to note the factors that militated toward his placement in the DOC: three referrals in a month's time, each involving multiple counts and the presence of a firearm, his commission of the acts in Cause 1623 while serving home detention pending trial, and his violation of home detention rules by allowing friends in his home and having a firearm in his bedroom. J.S.'s failure to abide by his pretrial home detention conditions does not bode well for his long-term prospects of success in less restrictive placements. Based on the foregoing, we conclude that the trial court acted within its discretion in ordering J.S.'s placement in the DOC. Accordingly, we affirm.

[16] Affirmed.

Najam, J., and Pyle, J., concur.