## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 31 2019, 11:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffery Haupt
Law Office of Jeffery Haupt
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| T.M., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner* | July 31, 2019 <br><br> Court of Appeals Case No. 19A-JV-602 <br><br> Appeal from the St. Joseph Probate Court <br><br> The Honorable Jason Cichowicz, Judge <br><br> The Honorable Graham C. Polando, Magistrate <br><br> Trial Court Cause Nos. <br> 71J01-1506-JD-247 <br> 71J01-1608-JD-242 <br> 71J01-1609-JD-297 <br> 71J01-1810-JD-349 |

**Crone, Judge.**

# Case Summary

[1] By age fifteen, T.M. had accumulated four true findings of delinquency, three for acts that would be felonies if committed by an adult. He repeatedly violated the terms of his placements and was the subject of several placement modification petitions. He now appeals a modification order placing him in the Indiana Department of Correction ("DOC"). Finding that the trial court acted within its discretion, we affirm.

# Facts and Procedural History

[2] In 2015, T.M. was adjudicated delinquent for committing an act amounting to class A misdemeanor theft if committed by an adult. He was placed on probation. In 2016, he had another delinquency finding for an act amounting to level 6 felony auto theft if committed by an adult. He was placed on electronic monitoring ("EM"), and shortly thereafter, he cut the band off his monitoring device and threw the device into a nearby river. As a result, he was adjudicated delinquent for an act amounting to level 6 felony escape if committed by an adult. He was placed in residential treatment at the Youth Opportunity Center ("YOC"), from which he attempted several escapes, sometimes in cold weather without a coat.

[3] After his release from the YOC, T.M. was returned to probation/home placement. He volunteered at a homeless shelter but subsequently stole the shelter's van. Police found the stolen van outside T.M.'s mother's home. As they sought to apprehend T.M., he attempted to flee through a second-story

window. This incident resulted in his 2018 delinquency adjudication for an act amounting to level 6 felony auto theft if committed by an adult. At the dispositional hearing, the trial court also considered placement modification petitions in T.M.'s three prior causes. The court imposed a suspended placement in the DOC with house arrest as a condition of his probation.

[4] T.M. continued to violate the terms of his house arrest and probation, so the probation department sought a modification of his placement from suspended to executed. The court held an emergency modification hearing and issued an order revoking T.M.'s probation in all four causes and executing his placement in the DOC. T.M. now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

[5] T.M. asserts that the trial court abused its discretion in modifying his placement to the DOC. The disposition of a juvenile adjudicated a delinquent is a matter committed to the trial court's discretion, subject to the statutory considerations of the child's welfare, community safety, and the policy favoring the least harsh disposition. *J.S. v. State*, 110 N.E.3d 1173, 1175 (Ind. Ct. App. 2018), *trans. denied* (2019). We review a trial court's disposition and modification thereof for an abuse of discretion, which occurs if the decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable inferences that may be drawn therefrom. *Id.*; *see also K.A. v. State*, 775 N.E.2d 382, 386 (Ind. Ct. App. 2002) (applying abuse of discretion standard where juvenile challenged modification of placement to DOC following her violation of terms

of suspended commitment), *trans. denied*. In determining whether a trial court has abused its discretion, we neither reweigh evidence nor judge witness credibility. *J.S.*, 110 N.E.3d at 1175.

[6] The crux of T.M.'s argument is that the trial court modified his placement to the harshest option when less restrictive alternatives were available. Juvenile court proceedings are civil, not criminal, in nature. *Id*. "[T]he goal of the juvenile process is rehabilitation so that the youth will not become a criminal as an adult." *Id*. at 1175-76 (quoting *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010)). Thus, juvenile courts have a variety of placement choices. Indiana Code Section 31-37-18-6 reads,

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> (A) in the least restrictive (most family like) and most appropriate setting available; and
>
> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[7] Indiana Code Section 31-37-18-9(a) requires the trial court to state its reasons for the disposition chosen. This involves the trial court's issuance of written findings and conclusions concerning the child's care, treatment, rehabilitation, or placement; parental participation in the plan; efforts made to prevent the child's removal from the parent; family services offered; and the court's reasons for its disposition. Ind. Code § 31-37-18-9(a)(1)-(5).

[8] Here, the trial court's findings indicate its consideration of the statutory factors and its reasons for ordering that T.M.'s placement be modified from a suspended to an executed placement in the DOC. For example, the findings emphasize the reasonable efforts taken by the court and the probation department to prevent T.M.'s removal from his home and family, the services made available to T.M. to address his dangerous behavior, T.M.'s continual disregard for the rules of his school/community, his home detention violations, the threat he poses to the community, the unsuccessful attempts at less restrictive placements, the lack of suitable relative placement, and T.M.'s best interests. Appealed Order at 2-3. The court ordered modification to an executed DOC placement based on the following reasons: T.M.'s failure to abide by Court ordered terms of probation, T.M.'s history of delinquent acts and the serious nature of his current auto theft offense as warranting placement in a secure facility, the fact that less restrictive means of controlling T.M.'s

behavior have been investigated or tried, and the community's right to protection as outweighing T.M.'s right to personal freedom. *Id*. at 2-3.

[9] Our review of the record shows T.M. to be a serial thief whose common theme has been to beg the court for "just one more chance" and then promise to do better. Tr. Vol. 2 at 40. He is either unwilling or unable to keep these promises and does not even appear to know why he steals. For example, when asked why he stole the homeless shelter's van, he replied, "I don't even know. I wasn't even thinkin[g]." *Id*. at 10. When his therapist suggested journaling as a means of combating his urges to steal, he never followed through.

[10] Moreover, the record shows T.M. to be a flight risk whose mother can no longer handle him. When he cut off his monitoring device and threw it in the river, his mother was billed $2000 for the damage. The apparently exasperated woman requested in court that her son not be placed back on EM. Yet, again, T.M. was given an opportunity to demonstrate some self-control. And again, he failed. As the trial court aptly stated at the end of the modification hearing, T.M.'s less restrictive placement options have been "exhausted … in every sense of that term." *Id*. at 41. The trial court acted within its discretion in executing T.M.'s DOC placement. Accordingly, we affirm.

[11] Affirmed.

Baker, J., and Kirsch, J., concur.