## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 26 2019, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffery Haupt
Law Office of Jeffery Haupt
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| T.L., <br> *Appellant-Respondent*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner* | November 26, 2019 <br><br> Court of Appeals Case No. 19A-JV-1257 <br><br> Appeal from the St. Joseph Probate Court <br><br> The Honorable Jason A. Cichowicz, Judge <br><br> The Honorable Graham C. Polando, Magistrate <br><br> Trial Court Cause Nos. <br> 71J01-1812-JD-426 <br> 71J01-1809-JD-325 <br> 71J01-1901-JD-24 <br> 71J01-1901-JD-25 |

**Crone, Judge.**

# Case Summary

In four separate causes, sixteen-year-old T.L. was adjudicated delinquent for acts amounting to level 5 felony child pornography, level 6 felony child exploitation, level 6 felony escape, level 6 felony auto theft, and class A misdemeanor theft if committed by an adult. In a joint dispositional hearing on all four causes, the trial court ordered his placement in the Indiana Department of Correction ("DOC"). T.L. now appeals his placement. Finding that the trial court acted within its discretion in ordering T.L.'s placement in the DOC, we affirm.

# Facts and Procedural History

In the summer of 2018, fourteen-year-old H.S. was playing basketball on an outdoor court in South Bend. T.L. and his cousin were at the same outdoor recreation area, and T.L. approached H.S., with whom he was acquainted. The two went behind a nearby residence, and T.L. told H.S. that he would hurt her family if she did not perform oral sex on him. H.S. complied, but unbeknownst to her, either T.L. or his cousin was videotaping the sexual encounter on a cell phone. T.L. subsequently posted the video on a Facebook messenger group chat that he and his friends used to display videos depicting nudity and sexual situations. H.S.'s mother became aware of the video and notified police, who commenced an investigation.

[3] In September 2018, police received a report of two teenage boys who stole merchandise worth $412 from a local retail store and sped off in a vehicle with two other boys. The store manager and police officers gave chase, and T.L. was eventually found behind a dumpster outside another retail store and apprehended. At the time of his apprehension, he was wearing a pair of jeans he had stolen. The State filed a delinquency petition alleging conduct amounting to class A misdemeanor theft ("Cause 325"). During the pendency of Cause 325, T.L. was placed on home detention with electronic monitoring. After a factfinding hearing, the trial court entered a true finding. The State requested that T.L.'s home detention be continued due to the ongoing investigation of the videotape incident involving H.S.

[4] Shortly thereafter, based on that incident, the State filed a juvenile delinquency petition alleging that T.L. committed acts amounting to level 5 felony child exploitation and level 6 felony child pornography if committed by an adult ("Cause 426"). During the pendency of Cause 426, T.L. cut off his electronic ankle monitor and ran away from home. His whereabouts were unknown for approximately two weeks, until he was discovered driving a vehicle that had been reported as stolen from an automobile dealership. A standoff ensued between T.L. and South Bend Police Department Officer Alan Wiegand. When Officer Wiegand walked toward the front of the vehicle in an alley, T.L. pressed the accelerator. However, the vehicle was in neutral, and the officer safely reached the driver's side. T.L. eventually was removed from the vehicle. Inside the vehicle, officers discovered two additional key fobs belonging to

different vehicles. T.L. was placed in detention at the local juvenile justice center, where he accumulated nearly forty misconduct reports in three months' time.

[5] The State filed additional delinquency petitions against T.L. for conduct amounting to level 6 felony escape ("Cause 24") and level 6 felony auto theft ("Cause 25"). T.L. admitted to the allegations in Causes 24 and 25 but denied the allegations in Cause 426. After a factfinding hearing in Cause 426, the trial court entered true findings for level 5 felony child exploitation and level 6 felony child pornography. The court ordered that T.L. undergo a psychosexual evaluation. During the evaluation, he admitted to being involved in a gang and reported that he had stolen more than fifty vehicles without being caught. He also requested a copy of his police report so that he could write a rap song about it. Evaluating psychologist Dr. Jeffrey Burnett found T.L. to be antisocial, impulsive, and self-centered, and a high risk to reoffend.

[6] The trial court conducted a joint dispositional hearing for all four causes. Dr. Burnett recommended that T.L.'s placement be restrictive. The probation department recommended placement in the DOC based on the findings in Dr. Burnett's report and T.L.'s numerous misconduct reports, which included incidents of gang promotion, threatening staff and peers, and battering a peer. The trial court committed T.L. to the DOC. T.L. now appeals his commitment. Additional facts will be provided as necessary.

## Discussion and Decision

[7] T.L. challenges his placement in the DOC. The disposition of a juvenile adjudicated a delinquent is a matter committed to the trial court's discretion, subject to the statutory considerations of the child's welfare, community safety, and the policy favoring the least harsh disposition. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). We review the trial court's dispositions for an abuse of discretion, which occurs if its decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable inferences that may be drawn therefrom. *Id*.

[8] Juvenile court proceedings are civil, not criminal, in nature. *J.S. v. State*, 110 N.E.3d 1173, 1175 (Ind. Ct. App. 2018), *trans. denied* (2019). "[T]he goal of the juvenile process is rehabilitation so that the youth will not become a criminal as an adult." *Id*. at 1175-76 (quoting *R.H.,* 937 N.E.2d at 388). Thus, juvenile courts have a variety of placement choices. *Id*. at 1176. Indiana Code Section 31-37-18-6 reads,

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> (A) in the least restrictive (most family like) and most appropriate setting available; and
>
> (B) close to the parents' home, consistent with the best interest and special needs of the child;

(2) least interferes with family autonomy;

(3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[9] Indiana Code Section 31-37-18-9(a)(5) requires the trial court to state its reasons for the disposition chosen. This involves the trial court's issuance of written findings and conclusions concerning the child's care, treatment, rehabilitation, or placement; parental participation in the plan; efforts made to prevent the child's removal from the parent; family services offered; and the court's reasons for its disposition. Ind. Code § 31-37-18-9(a)(1)-(5).

[10] Here, the trial court issued findings indicating its consideration of the statutory factors and its reasons for ordering placement in the DOC. These include: T.L.'s actions while on home placement, e.g., removing his electronic monitoring device and committing new delinquent acts; his repeated misconduct while detained in the juvenile justice center, which demonstrates that lesser restrictive means of controlling his behavior have failed; and the danger he poses to himself and others based on the serious nature of his offenses. Appealed Order at 2-3. At the close of the dispositional hearing, the trial court addressed T.L.'s harm to the community, his multiple offenses in the four separate causes before it, his numerous incident reports during detention,

the circumstances of the sexually graphic videotaping, in which "you, for your own kicks, decided to humiliate another person," and the fact that "you lied to my face in the – with respect to the auto theft charge." Tr. Vol. 2 at 90-91. The trial court acknowledged that commitment to the DOC is harsh and that it has been "extraordinarily difficult anytime" it has made that finding. *Id*. at 90. Ultimately, however, the court did make that finding, and reasoned that T.L. had "the fewest prospects for rehabilitation of anyone I've seen. And I highly doubt that even the DOC can do anything, but it's all I've got." *Id*. at 91.

[11] To the extent that T.L. touts his absence of a prior record as militating toward a less restrictive placement, we are unpersuaded, given the number and nature of the offenses before the trial court for disposition as well as T.L.'s conduct during the pendency of the proceedings. Like the trial court, we find particularly troubling T.L.'s activity related to (secretly) videotaping people in compromising, pornographic positions and posting the videos on a Facebook chat group specifically devoted to such videos. *See* Tr. Vol. 2 at 57 (H.S.'s testimony that T.L. told her he was just texting someone). T.L. was both the creator and the distributor of the objectionable material. Moreover, he demonstrated a lack of remorse for his delinquent conduct, bragging to Dr. Burnett about having stolen fifty vehicles without being caught and expressing his desire to use the details of his criminal activity as lyrics for a rap song. Lack of juvenile record notwithstanding, less restrictive options *have* been tried during the pendency of the proceedings and have failed spectacularly. Home detention with electronic monitoring did not deter T.L., as he simply cut off the device

and continued to commit delinquent acts. His nearly forty misconduct reports during his three-month tenure at the juvenile justice center, which include physically violent conduct and gang recruitment, do not engender confidence for his future success if placed outside the DOC. In short, the logic and effect of the facts and circumstances before the trial court support its decision to place T.L. in the DOC, and as such, we conclude that the court acted within its discretion. Accordingly, we affirm.

[12] Affirmed.

Baker, J., and Kirsch, J., concur.