# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 09 2019, 10:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K Leeman
Leeman Law Office and Cass County
Public Defender
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

B.D.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner*

December 9, 2019

Court of Appeals Case No.
19A-JV-1719

Appeal from the Cass Circuit Court

The Honorable Stephen R. Kitts, II, Judge

Trial Court Cause No.
09C01-1901-JD-12

**Crone, Judge.**

# Case Summary

B.D., a delinquent child, appeals the modification of his placement to the Indiana Department of Correction ("IDOC"). He contends that the trial court erred in entering an order modifying his placement and committing him to the IDOC without including specific written findings and conclusions as required by Indiana Code Section 31-37-18-9. Concluding that any error regarding the findings in support of modification of the disposition does not amount to reversible error, we affirm.

# Facts and Procedural History

In February 2019, seventeen-year-old B.D. was adjudicated a delinquent child for committing theft, a class A misdemeanor if committed by an adult, resisting law enforcement, a class A misdemeanor if committed by an adult, and two counts of unauthorized entry of a motor vehicle, a class B misdemeanor if committed by an adult. During the dispositional hearing, the State asked the trial court to take judicial notice of B.D.'s lengthy delinquency history as well as his numerous probation violations and failed dispositions in other cases. B.D.'s prior placements "included his placement on intensive supervision with GPS monitoring multiple times and residential placement in two different facilities." Appellant's App. Vol. 2 at 47. He previously absconded from GPS monitoring in one case and had twice been released from probation on "unsuccessful" status. *Id.* Accordingly, the State recommended B.D.'s placement in the IDOC. However, the trial court rejected that recommendation and instead imposed probation and placed B.D. on "intensive supervision with GPS

monitoring" for ninety days. *Id*. at 58. The trial court warned B.D. that, based upon his current offenses and his history, commitment to the IDOC would be the only remaining placement alternative if B.D. did not change his behavior.

[3] On May 13, 2019, the probation department filed a petition to modify dispositional decree, alleging that B.D. violated the terms of his probation by testing positive for THC. The probation department filed a second petition to modify dispositional decree on May 15, 2019, alleging that B.D. violated the terms of his probation by again testing positive for THC. Then, on June 5, 2019, the probation department filed a third petition to modify dispositional decree, alleging that B.D. violated the terms of his probation by: (1) cavorting with another juvenile on probation; (2) failing to attend probation appointments; and (3) failing to conform with curfew.

[4] At the modification hearing on June 26, 2019, B.D. admitted to each probation violation. The trial court then heard argument from both parties regarding the appropriate disposition and also heard testimony from B.D.'s probation officer. Based upon the evidence, both the prosecutor and the probation officer recommended B.D.'s placement with the IDOC. At the conclusion of the hearing, the trial court orally entered its order modifying B.D.'s placement to the IDOC. In doing so, the court gave a thorough explanation of its decision on the record. However, the written modification order subsequently issued by the trial court did not provide any specific findings or conclusions as to the court's reasoning for its disposition. This appeal ensued.

# Discussion and Decision

[5] B.D. appeals the trial court's order modifying his placement. "A juvenile court is accorded 'wide latitude' and 'great flexibility' in its dealings with juveniles." *J.T. v. State*, 111 N.E.3d 1019, 1026 (Ind. Ct. App. 2018) (citation omitted), *trans. denied* (2019). The disposition of a juvenile adjudicated a delinquent is a matter committed to the trial court's discretion, subject to the statutory considerations of the child's welfare, community safety, and the policy favoring the least harsh disposition. *J.S. v. State*, 110 N.E.3d 1173, 1175 (Ind. Ct. App. 2018), *trans. denied* (2019). We review a trial court's disposition and modification thereof for an abuse of discretion, which occurs if the decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable inferences that may be drawn therefrom. *Id.*; *see also K.A. v. State*, 775 N.E.2d 382, 386 (Ind. Ct. App. 2002) (applying abuse of discretion standard where juvenile challenged modification of placement to IDOC following her violation of terms of suspended commitment), *trans. denied*. In determining whether a trial court has abused its discretion, we neither reweigh evidence nor judge witness credibility. *J.S.*, 110 N.E.3d at 1175.

[6] When issuing an order modifying a juvenile disposition, the court must comply with the requirements governing dispositional orders. *See* Ind. Code § 31-37-22-3(c). This involves the trial court's issuance of written findings and conclusions concerning the child's care, treatment, rehabilitation, or placement; parental participation in the plan; efforts made to prevent the child's removal from the parent; family services offered; the court's reasons for its disposition; and

whether the child is a dual status child under Indiana Code Article 31-41. Ind. Code § 31-37-18-9(a)(1)-(6).

[7]     B.D.'s sole challenge to the trial court's modification order is that the court did not make the statutorily required written findings and conclusions regarding the enumerated factors. B.D. asserts that this failure constitutes reversible error because it has made "meaningful [appellate] review impossible" and prevents this Court from saying "with confidence that the judge would have reached the same decision had he … issued an order with specific findings of fact and conclusions." Appellant's Br. at 12, 18. While we agree with B.D. that the trial court did not comply with the statute, we do not agree that this noncompliance constitutes reversible error.

[8]     We acknowledge that the written modification order here contained only a bare recitation of the proceedings and a brief boilerplate reference to the court having reviewed "reports filed" and considered "the statements and evidence presented." Appellant's App. Vol. 2 at 103. This failure on the part of the trial court to comply with the statutory mandate for written specific findings on the enumerated issues constitutes clear error. Thankfully, the oral record provides us the additional information we need to conduct a meaningful appellate review. During the original February 2019 disposition hearing following B.D.'s delinquency adjudication in this case, the State recommended B.D.'s commitment to the IDOC based upon his current delinquent behavior as well as his extensive prior delinquency history. The prosecutor asked the court to take judicial notice of B.D.'s prior history, including that he had absconded

from GPS monitoring in another delinquency case. The trial court noted that commitment to the IDOC was probably warranted but nevertheless rejected the State's recommendation for commitment to the IDOC, instead choosing to place B.D. on "intensive supervision with GPS monitoring." *Id*. at 58. However, the trial court explicitly warned B.D. that commitment to the IDOC was imminent if he did not change his behavior. *See* Tr. Vol. 2 at 10 ("This is your last shot[,] beyond the last shot …").

[9] Thereafter, the record indicates that B.D. left home, his mother had no idea where he was, and he refused to go to school or find a job. He proceeded to rack up at least five probation violations, which prompted the State to file three separate petitions for modification of disposition. During the current modification hearing, B.D.'s probation officer went over B.D.'s lengthy delinquency history and explained that B.D. had "participated in about every service that juvenile probation has to offer [through] his four or five cases" with no success. *Id*. at 29. The officer stated that she believed that commitment to the IDOC was a necessary next step so that B.D. would be forced to cease his delinquent behavior and complete his education. In issuing its modification decision, the trial court explained on the record its reasons for accepting the recommendation of the probation department and modifying B.D.'s disposition to the IDOC. The trial court specifically referenced the probation reports as well as the court's familiarity with B.D., his family, and his delinquency history. The court explained that less restrictive placements had "been

exhausted previously" and that these other environments clearly could not give B.D. the supervision and structure he needed. *Id*. at 30.

[10] Again, acknowledging that the written order here is essentially unreviewable, we believe that this is not a case of reversible error. That is to say, the combined oral and written record provides sufficient information relevant to B.D.'s needs for care, treatment, rehabilitation, or placement, the services that were offered, and the court's reasons for its disposition, as to facilitate meaningful appellate review.[1] Significantly, B.D. does not assert that the trial court's actual decision to place him in the custody of the IDOC constituted an abuse of discretion. He simply argues that, in the absence of written findings, it is "unclear why a less restrictive alternative like shelter care was an inadequate disposition." Appellant's Br. at 18. As stated above, we think that the trial court made it patently clear why a less restrictive alternative was inadequate. Moreover, this Court has concluded that a juvenile court's failure to enter the required statutory findings in support of its dispositional order does not necessarily constitute reversible error. *See Madaras v. State*, 425 N.E.2d 670, 672 (Ind. Ct. App. 1981) (concluding that while "the court's failure to make findings was clearly error," reversal and remand to require court to detail its reasons for disposition would "serve no purpose" in light of conclusion that trial court's

---

[1] Although the trial court's written modification order vaguely references its consideration of "reports," it is clear from the oral record that the trial court incorporated and relied on reports from the probation department in making its decision. We note that the court was unable to incorporate by reference information from a predispositional report because B.D. waived the preparation of a report during the initial disposition hearing. Tr. Vol. 2 at 8; Appellant's App. Vol. 2 at 58.

disposition was indeed proper). Because B.D. does not even attempt to argue that his placement with the IDOC was an abuse of discretion, we cannot conclude that B.D. was prejudiced by the trial court's failure to enter adequate written findings.

[11] In reaching this conclusion, we do not intend to minimize the trial court's failures or the important role that written findings and conclusions regarding the enumerated statutory considerations serves for the parties and for appellate review.[2] We simply conclude that, given the record before us, as well as B.D.'s lack of argument that the evidence supports a less restrictive disposition, the court's failure to enter adequate written findings does not constitute reversible error. The trial court's modification order is affirmed.

[12] Affirmed.

May, J., and Pyle, J., concur.

---

[2] Having determined that the written modification form utilized by the trial court was inadequate, we trust that the trial court will alter its procedures and enter the required statutory findings and conclusions in juvenile cases moving forward.