## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 15 2020, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas C. Allen
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| D.L., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | October 15, 2020 <br><br> Court of Appeals Case No. 20A-JV-704 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Andrea R. Trevino, Judge <br><br> The Honorable Carolyn S. Foley <br><br> Trial Court Cause No. 02D07-1912-JD-1203 |

**May, Judge.**

[1] D.L. appeals his placement in the Department of Correction ("DOC") following his adjudication as a delinquent for committing acts that, if committed by an adult, would be Level 6 felony auto theft[1] and Level 6 felony resisting law enforcement.[2] Because the evidence supports the trial court's decision that the DOC was the best available placement for D.L., we affirm.

## Facts and Procedural History

[2] On December 12, 2019, D.L., who had never obtained a driver's license, stole a Honda Odyssey van. When a police officer located the stolen van and activated his lights and siren, D.L. did not stop until the van broke down. When the van stopped, D.L. ran from police on foot. Police apprehended D.L. and placed him in the Allen County Juvenile Center. After a detention hearing on December 13, 2019, the State filed a petition alleging D.L. was a delinquent for committing auto theft, driving without a license, and two counts of resisting law enforcement. On January 2, 2020, D.L. admitted committing auto theft and resisting law enforcement, the State dismissed the other two allegations, and the court adjudicated D.L. a delinquent. Following a dispositional hearing on February 26, 2020, the court placed D.L. in the DOC after finding "detention is essential to protect the child or community and is in the child's best interests."

---

[1] Ind. Code § 35-43-4-2(a).

[2] Ind. Code § 35-44.1-3-1(a)(3).

(Appealed Order at 2.)   The court also found "by way of example and not limitation":

> 1. The act committed by the juvenile would constitute a felony if committed by an adult.

> 2. The juvenile has an extensive history of incorrigible behavior.

> 3. The juvenile's delinquent conduct is chronic and escalating and the juvenile has been offered ample opportunities to alter such behavior.

> 4. The juvenile must learn the logical and natural consequences of delinquent behavior.

> 5. The juvenile is in need of rehabilitation and will benefit from a highly structured environment.

> 6. The Pre-Dispositional Report indicates that placement in a residential treatment facility is not an option at this time.

> 7. The Dual Status Assessment Team recommends treatment in the structured environment of the Indiana Department of Correction.

> 8. The Indiana Youth Assessment System indicates that juvenile is at a high risk to re-offend.

(*Id.* at 1.)

# Discussion and Decision

[3]     D.L. asserts the trial court abused its discretion when it placed him in the DOC. "The disposition of a juvenile adjudicated a delinquent is a matter committed to the trial court's discretion, subject to the statutory considerations of the child's welfare, community safety, and the policy favoring the least harsh disposition." *J.S. v. State*, 110 N.E.3d 1173, (Ind. Ct. App. 2018), *trans. denied*. We review the trial court's decision without reweighing the evidence or assessing witness credibility, and we reverse only if the "decision is clearly against the logic and effect of the facts and circumstances before [the court] or the reasonable inferences that may be drawn therefrom." *Id*.

[4]     As quoted above, the trial court included some findings in its written dispositional order. D.L. "does not contest the trial court's findings of fact," (Br. of Appellant at 16), and we accordingly accept those findings as correct. *See Coles v. McDaniel*, 117 N.E.3d 573, 576 (Ind. Ct. App. 2018) (unchallenged findings must be accepted as correct). In addition, when announcing its decision at the end of the dispositional hearing, the court made the following findings on the record:

> I do find that [D.L.] has a, an extensive history of delinquent behavior before the Court. Some of these matters have been closed with referrals to the Department of Child Services, and I am seeing that some of these matters have been dismissed, but even just looking at the most recent cases, the bottom line is that services appear to have been in place in one form or another since at least 2014, noting that this is designated as case twenty within the Court's computer system. So I do find that [D.L.] has an extensive history of delinquent behavior before the Court. I will note that as, as noted within the report of, the

Predispositional Report, that services have been attempted and provided through both the Department of Child Services as well as the Juvenile Probation Department. [D.L.] has been given opportunities at community services [and] has been given ample opportunity to alter his behaviors. I do find that [D.L.] needs to learn logical and natural consequences of his delinquent behavior. He remains in need of rehabilitation. The psychological test report that was submitted by, or to the Court, dated February 24, 2020, does recommend the intensive therapy services available through the [DOC] as being in [D.L.'s] best interests. We'll note that there have been services attempted through residential treatment which have been unsuccessful. That was through orders from, through the Department of Child Services. I will note that the Indiana Youth Assessment Tool does show that [D.L.] is a high risk for re-offense. The Dual Status Assessment Team Recommendation is also recommending the intensive therapeutic services available through the [DOC]. And finally note that the Predispositional Report is indicating that residential treatment is not an option, as no placement facilities would be willing to accept [D.L.] at this point in time. Sorry, I've got one more finding. We'll further note that [D.L.] does not appear to be responding to the structure of the Allen County Juvenile Center. According to the Juvenile Center Detention Court Report, [D.L.] has received five disciplinary reports since the last court report dated January 22 for a variety of issues, including damaging facility property. [D.L.], the staff states that [D.L.] needs constant redirection and has also received school disciplinary reports as well for failing to comply and physical aggression while in the classroom.

(Tr. Vol. 4 at 11-12.)

[5]     D.L. contends the court could have met its goal of giving him the "natural and logical consequences of his behavior" by placing him on probation with home detention and electronic monitoring, (Br. of Appellant at 16), because he had

already spent sixty-six days detained in the Juvenile Center. He also asserts that home detention with electronic monitoring would provide the "highly structured environment" that the court believed he needed, (*id*. at 17), and would permit him to engage in family and individual counseling to obtain "rehabilitative therapy." (*Id*. at 18.) Under the facts and circumstances presented herein, we must disagree.

[6] At the disposition hearing, D.L. requested home detention with electronic monitoring. However, after D.L. made that recommendation at the hearing, both the Department of Child Services ("DCS") and Probation expressed concerns about D.L.'s safety if he was placed with his mother rather than in the DOC. (*See* Tr. Vol. 4 at 8, 9.) Probation also had "concerns that placing him on a probation supervision with his mom would only make things worse." (*Id*. at 9.) Because D.L. had already had services through DCS and Probation, had been aggressive and destructive of property while in the Juvenile Center awaiting the dispositional hearing, and had been in the possible residential placements – none of which are willing to admit him again – we cannot say the trial court abused its discretion in placing D.L. in the DOC. *See*, *e.g.*, *D.E. v. State*, 962 N.E.2d 94, 97 (Ind. Ct. App. 2011) (trial court did not abuse its discretion in rejecting less restrictive placement when juvenile had already failed in that placement).

# Conclusion

[7] Contrary to D.L.'s assertion, the court did not abuse its discretion when it placed him in the DOC. Therefore, we affirm the trial court.

[8] Affirmed.

Riley, J., and Altice, J., concur.