

FILED
Jun 28 2023, 9:44 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Renee M. Ortega
Lake County Juvenile Public Defender's Office
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Kyle Hunter
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of: R.G. (Minor Child), <br><br> *Appellant-Defendant,* <br><br> v. <br><br> The State of Indiana, <br><br> *Appellee-Plaintiff* | June 28, 2023 <br><br> Court of Appeals Case No. 23A-JV-00011 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Thomas P. Stefaniak, Jr., Judge <br><br> The Honorable Robert G. Vann, Magistrate <br><br> Trial Court Cause No. 45D06-2207-JD-365 45D06-2207-JC-345 |

**Opinion by Judge May**
Chief Judge Altice and Judge Foley concur.

**May, Judge.**

[1] R.G. appeals the juvenile court's order awarding guardianship of him to the Indiana Department of Correction ("DOC") following his violation of the probation he was serving after his adjudication as a delinquent for acts that, if committed by an adult, would constitute Level 6 felony theft of a firearm[1] and Class A misdemeanor resisting law enforcement.[2] R.G. argues the trial court abused its discretion by sending him to DOC against the recommendations of the State and the Probation Department ("Probation"). We affirm.

## Facts and Procedural History

[2] In the summer of 2022, the State had filed three separate delinquency petitions against R.G. under cause numbers 45D06-2207-JD-000345 ("Petition 345"), 45D06-2207-JD-000365 ("Petition 365"), and 45D06-2207-JD-000366 ("Petition 366"). On July 5, 2022, under Petition 345, the State alleged R.G. was a delinquent child for committing acts that, if committed by an adult, would be Level 5 felony robbery,[3] Level 6 felony theft of a firearm, and Class A misdemeanor resisting law enforcement.[4] On July 11, 2022, under Petition 365, the State alleged R.G. was a delinquent child for committing acts that, if committed by an adult, would be Level 6 felony battery of a public service

---

[1] Ind. Code § 35-43-4-2(a).

[2] Ind. Code § 35-44.1-3-1(a)(1).

[3] Ind. Code § 35-42-5-1(a)(1).

[4] Ind. Code § 35-44.1-3-1(a)(3).

official,[5] Class A misdemeanor resisting law enforcement, Class B misdemeanor disorderly conduct,[6] and Class C misdemeanor refusal to give identifying information.[7] On July 11, 2022, under Petition 366, the State alleged R.G. was a delinquent child for committing an act that would be Class A misdemeanor resisting law enforcement[8] if committed by an adult.

[3] On July 14, 2022, the parties reached an agreement whereby R.G. would admit he committed acts that, if committed by an adult, would be Level 6 felony theft of a firearm as alleged in Petition 345 and Class A misdemeanor resisting law enforcement as alleged in Petition 365. In exchange, the State would dismiss all other charges from Petition 345 and Petition 365 and the entirety of Petition 366. The court adjudicated R.G. a delinquent and placed him in Intensive Probation with an electronic home monitor on August 11, 2022. On August 14 and August 22, 2022, R.G. posted pictures on Instagram of himself holding handguns, which was in direct violation of the terms of his probation. (Tr. Vol. 2 at 5.) On August 23, 2022, the court issued an arrest warrant based on R.G.'s probation violation.

[4] Probation began to investigate residential placements for R.G. because "remaining in the home would be contrary to the welfare of [R.G.]" when he

---

[5] Ind. Code § 35-42-2-1(c)(1).

[6] Ind. Code § 35-45-1-3(a)(2).

[7] Ind. Code § 36-2-13-5(b).

[8] Ind. Code § 35-44.1-3-1(a)(3).

continued to engage in dangerous behaviors while on probation. Rite of Passage – South Bend denied R.G. entry into its residential program because "he did not meet their criteria for admissions[.]" (*Id.* at 6.) "Youth Villages also entered a denial for [R.G.] as inappropriate for their facilities." (*Id.* at 35.) "Lacking any other residential placement" alternatives, the placement team recommended DOC on September 7, 2022. (*Id.* at 6.)

[5] On October 26, 2022, Probation reviewed the case with the Department of Child Services ("DCS") and amended their recommendation to residential placement at Rite of Passage – DePaul (out-of-state). "Probation further recommends that the youth remain detained pending placement as he poses a danger to the community." (App. Vol. 3 at 15.) Rite of Passage – DePaul reevaluated R.G. and "determined he would be an appropriate fit for their DePaul campus in state." (Tr. Vol. 2 at 35.) However, as of October 2022, Rite of Passage – DePaul did not have "an opening until about mid-December, and there [were] no other facilities in the state that did accept him." (*Id.*) The State and Probation recommended R.G. remain detained until residential placement had an open spot because R.G. is "a flight risk and a danger to the community." (*Id.* at 36.)

[6] On November 1, 2022, in a Modified Dispositional Decree, the trial court found R.G. was "released from Intensive Probation (Level 2) as failed." (App. Vol. 3 at 23.) The trial court rejected Probation's recommendation of placement for R.G. in a residential facility because

it is unreasonable under the circumstances and not in the best interests of the youth. Rather the court finds that the Department of Corrections [sic] is the most appropriate placement based upon the facts and circumstances herein. The DOC can provide the youth with the best opportunity to avoid criminal behavior as an adult.

(*Id.*) The trial court awarded wardship of R.G. to DOC and recommended the following programs: "Core Cognitive-Behavioral Treatment, Moral Recognitive Therapy and Why Try Learning Strategies Program." (*Id.*)

## Discussion and Decision

[7] The juvenile court system is founded on the notion of *parens patriae*, which allows the court to step into the shoes of the parents. *In re K.G.*, 808 N.E.2d 631, 635 (Ind. 2004). The *parens patriae* doctrine gives juvenile courts power to further the best interests of the child, "which implies a broad discretion unknown in the adult criminal court system." *Id.* The goal of the juvenile process is rehabilitation so that the youth will correct his behavior and not become a criminal as an adult. *Jordan v. State*, 512 N.E.2d 407, 408 (Ind. 1987). "Juvenile judges have a variety of placement choices for juveniles who have delinquency problems," none of which are considered sentences. *Id.*

[8] R.G. argues the juvenile court abused its discretion when it awarded guardianship of him to the DOC. A decision is an abuse of discretion if it is clearly against the logic and effect of the facts and circumstances before the trial court or against "the reasonable, probable, and actual deductions to be drawn"

from those facts and circumstances. *K.S. v. State*, 114 N.E.3d 849, 854 (Ind. Ct. App. 2018), *trans. denied.* While juvenile courts have "'wide latitude and great flexibility'" in fashioning dispositions for delinquents, *id.* (quoting *C.T.S. v. State*, 781 N.E.2d 1193, 1203 (Ind. Ct. App. 2003), *trans. denied*), our legislature delineated factors the trial court should consider as it makes its decision:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> > (A) in the least restrictive (most family like) and most appropriate setting available; and
> >
> > (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Ind. Code § 31-37-18-6.

[9]     R.G. argues the trial court abused its discretion when it did not follow the recommendation of Probation and the State to place R.G. in a residential placement that would be less restrictive than DOC. R.G. argues "residential placement was clearly available to the Trial Court." (Appellant's Br. at 11.)

However, R.G. was denied placement in all but one residential facility and that placement was not going to have an opening for R.G. for at least six to eight weeks. Therefore, we cannot say the trial court abused its discretion in ordering R.G. to be placed in the DOC, where he could immediately begin programs that the trial court believed would benefit R.G. *See K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006) ("After repeated probation violations, the juvenile court reasonably concluded that commitment to the DOC, where counseling and educational programs were to continue, served everyone's best interests.").

[10] Nevertheless, R.G. brings our attention to *C.H. v. State*, 201 N.E.3d 202 (Ind. Ct. App. 2022), and argues the same result should be reached here as well. In *C.H.*, we held a juvenile's commitment to DOC was not appropriate. C.H. was adjudicated a delinquent child for acts that, if committed by an adult, would constitute Level 6 felony theft of a firearm, Class A misdemeanor carrying a handgun without a license, Class C misdemeanor operating without a license, and Class C infraction for speeding. "[T]his was not only C.H.'s first delinquency adjudication but the first time a delinquency petition had been filed against him." *Id.* at 205. C.H. was denied probation in his mother's home pending disposition. In drawing the comparison with *C.H.*, R.G. fails to recognize that C.H.'s behavior at the Vigo County Detention Center "was exemplary" while the case was pending. *Id.* at 202. In a letter from the director of C.H.'s detention center, C.H. was described as having made "'remarkable progress' and 'amazing strides' and that C.H. 'is well liked by his peers and gets along with everyone, always avoiding confrontations when they arise.'" *Id.* at

204. R.G., on the other hand, violated probation by posting pictures on Instagram of himself with firearms and by being "in a few physical altercations while in detention." (Ex. Vol. 3 at 9.) Furthermore, C.H.'s Indiana Youth Assessment System ("IYAS") score showed a "low risk of reoffending." 201 N.E.3d at 205. In contrast, R.G.'s IYAS score revealed a high risk of reoffending, and Probation believed R.G. was a "danger to the community." (App. Vol. 3 at 15.) The pre-dispositional report states that "[R.G.] was previously ordered home based services, and through his actions have [sic] shown that he is not amenable to service provided in a home environment and would benefit from the secure setting at the Department of Corrections [sic]." (Ex. Vol. 3 at 10.) For all these reasons, the trial court did not abuse its discretion when it placed R.G. in the DOC. *See J.S. v. State,* 110 N.E.3d 1173, 1178 (Ind. Ct. App. 2018) (juvenile court did not abuse its discretion in ordering juvenile's placement to DOC following probation violations for gun-related offenses, even though a less-restrictive option of residential placement was available), *trans. denied*.

## Conclusion

[11] The trial court did not abuse its discretion when it placed R.G. in DOC when R.G. failed to abide by probation requirements, he engaged in physical altercations while in detention, and the only residential placement facility that accepted R.G. did not have an opening for six to eight weeks. Accordingly, we affirm.

Affirmed.

Altice, C.J., and Foley, J., concur.