Jennifer **BARBER**, Appellant–
Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0901–CR–34.

Court of Appeals of Indiana.

Aug. 17, 2009.

---

Julie Ann Slaughter, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ann L. Goodwin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Jennifer Barber appeals her convictions for Class A misdemeanor operating while intoxicated and Class C misdemeanor failure to stop after an accident resulting in property damage. Specifically, Barber argues that the trial court abused its discretion in denying the motion to continue filed on the Monday morning of her bench trial, which was set a mere two months after her arrest, because her defense counsel had located two witnesses that weekend who

supported her defense of involuntary intoxication. The trial court denied her motion because the deadline to file the witness list had passed two weeks before. In light of Barber's constitutional right to present a defense coupled with the strong presumption in favor of allowing the testimony of even late-disclosed witnesses, we conclude that the trial court abused its discretion in denying Barber's motion to continue. We therefore reverse the trial court and remand for a new trial.

## Facts and Procedural History

On the evening of October 15, 2008, Barber, a professional level billiards player, drove to the American Legion Hall on Holt Road in Marion County, Indiana, to play billiards. Because Barber received "a lot of recognition when [she went] in public and play[ed]," she chose this American Legion, where she could "play with a few friends and not be bombarded all the time[.]" Tr. p. 59. Barber's sister also worked at this American Legion. According to Barber, on this night, per her routine, she drank one vodka martini and sipped it throughout the course of the evening.

After spending two to three hours at the Legion, Barber left in her vehicle and rear-ended Nancy Hiser's vehicle at the intersection of 10th Street and Cossell Road. As Hiser called 911, Barber left the scene of the accident. Barber then drove into a ditch in front of a mortuary in the 5500 block of West 10th Street. Officer Michael Clupper from the Speedway Police Department responded. Upon approaching Barber in her vehicle, Officer Clupper ordered her to turn off her vehicle. Officer Clupper then asked Barber whether she had been drinking and whether she knew anything about a crash. Barber responded that she had not been drinking and that she did not know anything about a crash. Officer Clupper noticed the odor of an alcoholic beverage, slurred speech, and bloodshot eyes. When Officer Clupper asked Barber to exit the vehicle, she could not open the door, although he was easily able to do so. Officer Clupper then asked Barber for her driver's license and registration. Barber initially could not find them, but when she did, she kept dropping them. Eventually, Officer Clupper had to assist Barber out of her vehicle. He then had Barber lean against her vehicle because she could not stand on her own. Officer Clupper attempted to administer standardized field sobriety tests to Barber, but she was unable to follow directions. Officer Clupper administered a portable breathalyzer test to Barber, which tested positive for the presence of alcohol. Officer Clupper then advised Barber of Indiana's Implied Consent Law. Barber consented to a chemical test and was transported to the Speedway Police Department.

After arriving at the police station, Officer Clupper asked Barber to stand up in order to take the certified chemical test. When Barber stood up, "she immediately fell over and hit her head on the desk that is in the breath test room." *Id.* at 42. Eventually, Barber was able to stand up and sit in a nearby chair. However, a few minutes later, she fell out of the chair onto the floor and passed out. Barber was taken to Wishard Hospital. While in the hospital, a blood draw was not done.

According to Barber, she has no recollection of leaving the American Legion in her vehicle or being involved in an accident. The last thing she remembers is hitting a difficult pool shot then waking up in the hospital.

On October 16, 2008, the State charged Barber with Class A misdemeanor operating a vehicle while intoxicated, Class B misdemeanor public intoxication, and Class C misdemeanor failure to stop after an

accident resulting in property damage. At the initial hearing, a public defender was appointed for Barber. At an October 20, 2008, pre-trial conference, Barber requested her first continuance, which the trial court granted.

On November 17, 2008, about one month after Barber's arrest, Barber requested a second continuance. This Verified Emergency Motion to Continue provides:

1. This cause is set for Bench Trial on November 17, 2008 at 9:00 A.M.

2. Discover[y] is ongoing in this matter and witnesses have been difficult for the Public Defender's Agency Investigators to identify.

3. On the evening on November 14, 2008, an investigator located one of the many potential witnesses that would be essential to the Defendant's case, however through that investigation, it has been learned that there may be several other witnesses left to be identified.

4. Defense Counsel cannot provide an effective defense for Ms. Barber due to the discovery limitations.

5. This motion is not made for the purpose of undue delay.

Appellant's App. p. 19. The trial court granted the motion to continue and set the trial for December 15, 2008. On December 1, 2008, Barber filed her witness list, which named one witness, Missy Beauchamp.

On December 15, 2008, the day of her bench trial and only two months after her arrest, Barber requested a third continuance. This Verified Emergency Motion to Continue provides:

1. This cause is set for Bench Trial on December 15, 2008 at 9:00 A.M.

2. Discover[y] is ongoing in this matter and witnesses have been difficult for the Public Defender's Agency Investigators to identify.

3. The Defendant is arguing a defense of involuntary intoxication and because of the circumstances that evening, it has been extremely difficult to locate appropriate witnesses.

4. The Defendant and Defense Counsel, herself, and through the use of investigators at the Marion County Public Defender's Agency have spent numerous hours trying to locate witnesses essential to the Defendant's case.

5. On Saturday, December 13, 2008, Defense Counsel finally made contact with two witnesses who would provide essential testimony to the defense.

6. Defense Counsel cannot provide an effective defense for Ms. Barber due to the discovery limitations.

7. This motion is not made for the purpose of undue delay.

8. In the alternative of a continuance, the Defense would be requesting that this Honorable Court bifurcate the trial to give the Defense an opportunity to present these essential witnesses.

*Id.* at 22. Along with this motion, Barber filed an updated witness list naming only Mike Mathis and Rhonda Collier. *Id.* at 24.

When the parties were before the trial court, defense counsel explained:

Well Judge I spent tirelessly hours myself with my investigators, with my client, trying to locate witnesses. I got a phone call on Saturday with the witness I had been spending the past month looking for. I was ready, prepared to proceed with trial at that time and of course I would not be [inaudible] to bifurcate a trial just to get a chance to get that witness here. I did list one witness [Missy Beauchamp] who ended up, she's not here and that's perfectly fine with us, we would not probably even called her in the end just because we're

calling her in lieu of finding Ms. Rhonda Collier. Mike Mathis can just support Rhonda Collier's stories as well as my client's and their testimony but using due diligence it took me a month and it took over the weekend on Saturday when I was in my office[ ] for me to receive any contact information from that person.

Tr. p. 3–4. Defense counsel then explained that Barber's defense was involuntary intoxication and that she believed someone at the American Legion that night drugged her, causing her to be at such a high level of intoxication. The court then asked for an offer of proof from Collier, and defense counsel said, "That she . . . also was in that state at that night because of that reason and exact same scenario as my client." *Id.* at 4. The court responded that the "problem is I get reassigned after today so if I start this trial I'm going to have to find a way to come back and do it." *Id.* at 5. The State then interjected that it objected to any bifurcation "partially for the fact that any evidence that may be presented later the State won't have rebuttal witnesses present in the event that that becomes necessary." *Id.* In addition, the State argued that it "was ready to proceed with trial had Defense counsel simply sent an e-mail to the State I potentially could have agreed to call off the witnesses this morning, in fact Ms. Hiser called my office[ ] this morning to make sure she really needed to be here." *Id.* at 5–6. The court

explained that its "greatest concern is I set a hard deadline for the witness list to be filed which was December 1st." *Id.* at 7. As such, the court denied Barber's motion to continue, and the bench trial ensued.

Barber testified in her own defense at trial. Specifically, she testified that she left her drink unattended for periods of time that night and that, because she only had one drink that night and there was a distinct point in time when she could not remember anything, she believes someone at the American Legion must have slipped a drug in her drink when she was not looking. The trial court found Barber guilty as charged but only entered judgment of conviction for operating while intoxicated[1] and failure to stop after an accident resulting in property damage[2] because of double jeopardy concerns. The court sentenced Barber to an aggregate term of 365 days, with 363 days suspended to probation. Barber now appeals.

### Discussion and Decision

 Barber contends that the trial court erred in denying the motion to continue she filed on the morning of her trial because it prevented her from fully presenting her defense of involuntary intoxication, thereby violating her due process rights. Rulings on non-statutory motions for continuance lie within the discretion of the trial court and will be reversed only for an abuse of that discretion and resultant

---

1. Ind.Code § 9–30–5–1(b). We note that the Abstract of Judgment shows that Barber was convicted under this section, which requires her to operate a vehicle with an alcohol concentration equivalent to at least 0.15 gram of alcohol per 100 milliliters of her blood or 210 liters of her breath. *See* Appellant's App. p. 9; *see also id.* at 3 (CCS entry). However, according to the charging information, Barber was charged with an A misdemeanor under Indiana Code § 9–30–5–2(b), which requires her to operate a vehicle while intoxicated in a

manner that endangers a person. *See id.* at 15. Because Barber did not submit to a chemical test and a blood draw was not done, we are perplexed as to why the trial court entered judgment of conviction under Indiana Code § 9–30–5–1. Because we are reversing the trial court and remanding for a new trial, we point this out for purposes of retrial.

2. Ind.Code §§ 9–26–1–2, –9.

prejudice.[3] *Maxey v. State*, 730 N.E.2d 158, 160 (Ind.2000); *Jackson v. State*, 758 N.E.2d 1030, 1033 (Ind.Ct.App.2001). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Maxey*, 730 N.E.2d at 160; *Jackson*, 758 N.E.2d at 1033.

▆▆▆ Every defendant has the fundamental right to present witnesses in his or her own defense. *Roach v. State*, 695 N.E.2d 934, 939 (Ind.1998) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *Kellems v. State*, 651 N.E.2d 326, 328 (Ind.Ct.App. 1995)), *reh'g granted on other grounds*, 711 N.E.2d 1237 (Ind.1999). "This right 'is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.'" *Id.* (citing *Washington*, 388 U.S. at 19, 87 S.Ct. 1920). "At the same time, while the right to present witnesses is of the utmost importance, it is not absolute." *Id.* (citing *Chambers*, 410 U.S. at 302, 93 S.Ct. 1038; *Kellems*, 651 N.E.2d at 328). " 'In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *Id.* (quoting *Chambers*, 410 U.S. at 302, 93 S.Ct. 1038).

▆▆▆ Here, the trial court denied Barber's motion to continue because it had set a hard deadline of December 1, 2008, for the witness list, and the court had "the inherent power to say this is the deadline for getting witnesses filed." Tr. p. 8. "There is no question that trial courts have the discretion to exclude belatedly disclosed witnesses." *S.T. v. State*, 764 N.E.2d 632, 635 (Ind.2002). However, this discretion is limited to instances where there is evidence of bad faith on the part of counsel or a showing of substantial prejudice to the State. *Id.* Indeed, in light of a defendant's right to compulsory process under the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution, there is a strong presumption in favor of allowing the testimony of even late-disclosed witnesses. *Id.* at 636. Where a party fails to timely disclose a witness, courts generally remedy the situation by providing a continuance rather than disallowing the testimony. *Id.*

In this case, there is no evidence that defense counsel acted in bad faith in asking for a continuance on the morning of Barber's December 15, 2008, bench trial and filing her updated witness list that morning as well. Defense counsel had just located the witnesses that weekend and needed time to secure their presence for trial. Barber was arrested on October 15, 2008. Barber's first continuance came only five days after her arrest and before her defense counsel had been appointed. Barber's second continuance was filed on November 17, 2008, about one month after her arrest. It provided, "On the evening on November 14, 2008, an investigator located one of the many potential witnesses that would be essential to the Defendant's case, however through that investigation, it has been learned that *there may be several other witnesses left to be identified.*" Appellant's App. p. 19 (emphasis added). As a result, defense counsel alleged that she

---

3. Barber does not argue that she was entitled to a statutory continuance pursuant to Indiana Code § 35–36–7–1.

could not provide an effective defense for Barber. The trial court granted the continuance and scheduled the trial for December 15, 2008. In the meantime, defense counsel and the Public Defender's Agency Investigators continued to look for additional witnesses. On Saturday, December 13, 2008, two days before trial, defense counsel finally contacted two additional witnesses, Mathis and Collier, who could support Barber's defense of involuntary intoxication. Accordingly, on the morning of trial, defense counsel filed a Verified Emergency Motion to Continue seeking a motion to continue the trial or, in the alternative, a motion to bifurcate the trial allowing the State to present its witnesses that day and giving the defense an opportunity to present its newfound witnesses on a later date. Defense counsel then provided an offer of proof. The only prejudice the State alleged it would suffer was that had it known earlier, it could have called off its witnesses (two civilians and two officers), who showed up for trial that morning. However, defense counsel located Mathis and Collier over the weekend and filed the motion to continue on Monday morning, the day of the bench trial. As such, the State would not have known whether the trial was still on until the trial court ruled on the motion. The prejudice to the State is minimal.

Barber's defense was involuntary intoxication. Under Indiana law, "[i]t is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated, only if the intoxication resulted from the introduction of a substance into his body: (1) without his consent; or (2) when he did not know that the substance might cause intoxication." Ind.Code § 35–

41–3–5. There is obvious prejudice to Barber from not being able to present the testimony of Collier and Mathis. Although Barber testified that she believed she was drugged, Collier would have testified that she believed the same thing happened to her on the evening of October 15, 2008, at the same American Legion. And according to defense counsel, Mathis would have supported both Barber's and Collier's testimony. This is the bolstering testimony of disinterested and objective witnesses. *See S.T.,* 764 N.E.2d at 636 ("[A]lthough L.C. and S.T.'s mother were not exactly objective and detached witnesses, they nonetheless would have added a different perspective to the defendant's version of events and reinforced his account, and therefore, the exclusion of the witnesses unnecessarily prejudiced the defendant.") (quotation omitted).

In light of Barber's right to present a defense, the strong presumption in favor of allowing the testimony of even late-disclosed witnesses, the lack of substantial prejudice to the State, and the resultant prejudice to Barber, we conclude that the trial court abused its discretion in denying Barber's motion to continue and therefore remand for a new trial.[4]

Reversed and remanded for a new trial.

NAJAM, J., and FRIEDLANDER, J., concur.

---

4. As for Barber's second argument that Officer Clupper's failure to obtain a chemical test on her rendered his compliance with Indiana's Implied Consent Law illusory, thereby interfering with her right to present a defense, we note that Indiana Code § 9–30–6–2(a) provides, "A law enforcement officer who has probable cause to believe that a person has committed an offense under this chapter, IC 9–30–5, or IC 9–30–9, or a violation under

IC 9–30–15 shall offer the person *the opportunity* to submit to a chemical test." (Emphasis added). Officer Clupper offered Barber the opportunity to take a chemical test, but she fell down, passed out, and was transported to the hospital. Therefore, Barber was unable to submit to the chemical test. The right to due process does not include the right to be given a chemical sobriety test in all circumstances. *Parker v. State*, 530 N.E.2d 128, 130 (Ind.Ct.App.1988). To hold otherwise would be to transform the accused's right to due process into a power to compel the State to gather in the accused's behalf what might be exculpatory evidence. *Id.* Therefore, Officer Clupper was not then required to obtain a blood draw on Barber in order to help prove what would later become her defense that she was involuntarily intoxicated.