## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 26 2019, 8:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James Brandon Dillon
The Dillon Law Firm, LLC
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tiras D. Johnson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 26, 2019 <br><br> Court of Appeals Case No. 19A-CR-1769 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable David A. Happe, Judge <br><br> Trial Court Cause No. 48C04-1709-F2-2231 |

**Najam, Judge.**

# Statement of the Case

Tiras D. Johnson appeals his convictions for dealing in cocaine, as a Level 2 felony; dealing in methamphetamine, as a Level 2 felony; and maintaining a common nuisance, as a Level 6 felony, following a jury trial. Johnson raises two issues for our review, which we restate as follows:

1.      Whether the trial court abused its discretion when it denied Johnson's motion to continue his jury trial, which motion Johnson made one day before his trial was scheduled to commence.

2.      Whether the State violated his constitutional rights when it searched his residence without a warrant but pursuant to the terms of Johnson's conditions of release on community corrections.

We affirm.

# Facts and Procedural History

In 2017, the Madison County Drug Task Force engaged in controlled drug buys from Eric Troutman. In August, Drug Task Force and Anderson Police Department Officer Chad Boynton learned from Troutman that Johnson was involved in drug activity. Officer Boynton then learned that Johnson had been placed in local community corrections and had signed an agreement with the Madison County Community Justice Center pursuant to his placement.

Johnson's agreement to be placed in community corrections included the following waivers:

11. I agree and specifically waive any and all rights as to search and seizure under the laws and constitutions of both the United States and the State of Indiana.

12. I have been advised of my rights and understand that any community corrections staff, law enforcement officer or probation officer may enter my residence at any time without prior notice to search. I agree and consent to these terms, and understand that, upon request, I must facilitate the entry to my vehicle, residence, other location where my property may be located, or electronic devices, by providing keys, combinations or passwords. My refusal to do so would be a violation which could cause my sentence to be revoked.

Ex. Vol. at 8.[1] In a supplemental document attached to the agreement and titled "[d]isclosure to individuals residing with a participant on electronic monitoring," the following language appears:

This disclosure is provided to make you aware that as a participant of the electronic monitoring/Home Detention Program [Johnson] has signed a contract that states:

I agree to allow the Madison County Community Justice Center Staff to enter my residence at any time, without prior notice, and to make reasonable inquiry into my activities and the activities of others in the home. I agree to waive my right against search and seizure, and permit Madison County Community Justice Center *or any law enforcement officer acting on behalf of* Madison County Community Justice Center to search my person, residence,

---

[1] Our pagination of the Exhibits Volume is based on the .pdf pagination.

> motor vehicle or any other location where my personal property may be found . . . .

*Id.* at 14 (emphasis added).

[5] Officer Boynton approached officials at the Community Justice Center and informed them that Troutman had identified Johnson as a participant in drug activity. Those officials then "requested . . . that [the Anderson Police Department] make contact at the residence and proceed with a search . . . to verify whether the information was accurate." Tr. Vol. III at 9. Officer Boynton and other officers then went to Johnson's residence, went inside, and immediately smelled the "odor of burnt . . . marijuana." *Id.* at 37. The officers then searched the residence and seized 679.97 grams of cocaine; 367.60 grams of methamphetamine; firearms; manufacturing equipment; and $6,944.02 in cash. Officers also found Johnson's driver's license under the cushions of a couch.

[6] On September 1, the State charged Johnson with dealing in cocaine, as a Level 2 felony; dealing in methamphetamine, as a Level 2 felony; and maintaining a common nuisance, as a Level 6 felony. The court later set Johnson's jury trial date for June 5, 2019. On June 4, Johnson moved to continue the trial, among other reasons, so that he could locate and depose an additional witness. According to Johnson, the additional witness would have "testif[ied] that [there was a] person[] in the house other than Mr. Johnson." Tr. Vol. II at 119. But Johnson gave no explanation to the court as to why that witness had yet to be deposed or the efforts he had previously made to locate that witness, and the

court responded to Johnson's motion by stating that "[t]his is a case which is over eighteen . . . months old now" and "at some point the court has to hold parties accountable for timely preparation of a case." *Id.* at 120. The court then denied the motion to continue.

At Johnson's ensuing trial, he objected to the evidence seized from his residence on the ground that it had been seized in violation of his state and federal constitutional rights. The trial court overruled that objection. The jury then found Johnson guilty as charged, which the trial court reduced to judgment. The court then sentenced Johnson, and this appeal ensued.

## Discussion and Decision

### Issue One: Motion to Continue

On appeal, Johnson first asserts that the trial court abused its discretion when it denied his motion to continue. We review the trial court's decision to grant or deny a motion to continue for an abuse of discretion. *Maxey v. State*, 730 N.E.2d 158, 160 (Ind. 2000). An abuse of discretion occurs when the trial court's judgment is clearly against the logic and effect of the facts and circumstances before the court. *E.g.*, *Schuler v. State*, 132 N.E.3d 903, 904 (Ind. 2019). "A motion to postpone the trial on account of the absence of evidence can be made only upon affidavit,[2] showing the materiality of the evidence

---

[2] The record does not show that Johnson's June 4 motion to continue was in writing and verified. Nonetheless, we prefer to resolve appeals on their merits, and the State does not assert that the fact that Johnson only made his motion orally should be the basis for our decision.

expected to be obtained, and that due diligence has been used to obtain it . . . ." Ind. Trial Rule 53.5.

[9] According to Johnson, the trial court erred when it denied his motion to continue because, in doing so, the court denied him the right to present a defense by effectively prohibiting him from locating and deposing the additional witness. Johnson further asserts that his case is analogous to the facts of *Barber v. State*, in which we held that the trial court abused its discretion when it denied the defendant's motion to continue to depose an additional, recently discovered witness. 911 N.E.2d 641, 646-47 (Ind. Ct. App. 2009), *trans. denied*. In particular, in *Barber* we stated as follows:

> there is no evidence that defense counsel acted in bad faith in asking for a continuance on the morning of Barber's December 15, 2008, bench trial and filing her updated witness list that morning as well. Defense counsel had just located the witnesses that weekend and needed time to secure their presence for trial. Barber was arrested on October 15, 2008. Barber's first continuance came only five days after her arrest and before her defense counsel had been appointed. Barber's second continuance was filed on November 17, 2008, about one month after her arrest. It provided, "On the evening on November 14, 2008, an investigator located one of the many potential witnesses that would be essential to the Defendant's case, however through that investigation, it has been learned that *there may be several other witnesses left to be identified*." Appellant's App. p. 19 (emphasis added). As a result, defense counsel alleged that she could not provide an effective defense for Barber. The trial court granted the continuance and scheduled the trial for December 15, 2008. In the meantime, defense counsel and the Public Defender's Agency Investigators continued to look for additional witnesses. On Saturday, December 13, 2008, two days before trial, defense

counsel finally contacted two additional witnesses, Mathis and Collier, who could support Barber's defense of involuntary intoxication. Accordingly, on the morning of trial, defense counsel filed a Verified Emergency Motion to Continue seeking a motion to continue the trial or, in the alternative, a motion to bifurcate the trial allowing the State to present its witnesses that day and giving the defense an opportunity to present its newfound witnesses on a later date. Defense counsel then provided an offer of proof. The only prejudice the State alleged it would suffer was that had it known earlier, it could have called off its witnesses (two civilians and two officers), who showed up for trial that morning. However, defense counsel located Mathis and Collier over the weekend and filed the motion to continue on Monday morning, the day of the bench trial. As such, the State would not have known whether the trial was still on until the trial court ruled on the motion. The prejudice to the State is minimal.

Barber's defense was involuntary intoxication. Under Indiana law, "[i]t is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated, only if the intoxication resulted from the introduction of a substance into his body: (1) without his consent; or (2) when he did not know that the substance might cause intoxication." Ind. Code § 35-41-3-5. There is obvious prejudice to Barber from not being able to present the testimony of Collier and Mathis. Although Barber testified that she believed she was drugged, Collier would have testified that she believed the same thing happened to her on the evening of October 15, 2008, at the same American Legion. And according to defense counsel, Mathis would have supported both Barber's and Collier's testimony.

*Id.*

[10] Here, as in *Barber*, there is no evidence that defense counsel acted in bad faith when he requested a continuance. Nonetheless, we cannot agree with Johnson

that his facts are analogous to the detailed showing in *Barber* or that the trial court here abused its discretion. Johnson asserts that the additional witness would have testified that there was another person at the residence with Johnson at the time of the search and seizure. Be that as it may, unlike in *Barber*, Johnson does not explain the materiality, if any, such testimony would have had to Johnson's defense. Also, unlike the two-month timeframe in *Barber*, Johnson had approximately eighteen months to locate and depose his additional witness. And further unlike in *Barber*, Johnson makes no attempt to show the due diligence he may have used to locate and depose that witness within that timeframe. Thus *Barber* is inapposite here, and we cannot say that the trial court abused its discretion when it denied Johnson's motion to continue.

### Issue Two: Warrantless Search and Seizure

[11]    Johnson next asserts that the State violated his state and federal constitutional rights against unreasonable searches and seizures when it entered his home without a warrant. "We review *de novo* a trial court's ruling on the constitutionality of a search and seizure." *Belvedere v. State*, 889 N.E.2d 286, 287 (Ind. 2008).

[12]    Johnson asserts that he only waived his rights with respect to searches and seizures for those officers "acting on behalf of" the Madison County Community Justice Center. Appellant's Br. at 17-18. But Johnson does not discuss his agreement with the Community Justice Center in his argument on

appeal. Instead, Johnson's argument relies on the language of the disclosure to third parties that was attached to the agreement.

[13] We reject Johnson's argument. The actual agreement he signed to participate in community corrections unambiguously waived his rights with respect to searches and seizures by law enforcement officers, whether those officers were acting on behalf of the Community Justice Center or not. And we reject Johnson's bald assertion that Officer Boynton's coordination with the Community Justice Center prior to searching Johnson's residence was pretextual. The record supports the conclusion that the Community Justice Center asked Officer Boynton to act on the its behalf. In any event, again, as a condition of his placement in community corrections Johnson validly waived his right to complain about searches and seizures at his residence. Accordingly, we affirm the trial court's admission of the evidence seized from Johnson's residence.

## Conclusion

[14] In sum, we affirm Johnson's convictions.

[15] Affirmed.

Vaidik, C.J., and Tavitas, J., concur.