## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 11 2020, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kelly Starling
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

A.W.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner*

February 11, 2020

Court of Appeals Case No.
19A-JV-1792

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Geoffrey A. Gaither, Magistrate

Trial Court Cause No.
49D09-1902-JD-146

**Crone, Judge.**

# Case Summary

Sixteen-year-old A.W. was adjudicated delinquent for conduct amounting to level 5 felony robbery if committed by an adult. He now appeals, claiming that the trial court erred in granting the State's oral motion for continuance and in ordering his placement in the Indiana Department of Correction ("DOC"). We affirm.

# Facts and Procedural History

A.W. was born in November 2002. At age three, he lost his father, who was killed in a police shooting. He was raised by his mother, with assistance from his grandparents. By age sixteen, he had accumulated ten delinquency referrals, some of which involved multiple allegations of delinquent behavior. A.W.'s referrals began at age twelve, when he was adjudicated delinquent for truancy. At ages fourteen and fifteen, he had two true findings for conduct amounting to level 5 felony battery resulting in bodily injury to a public safety officer, one for level 6 felony receiving stolen auto parts, one for level 6 felony escape, and one for class A misdemeanor battery resulting in bodily injury, all if committed by an adult. At age sixteen, he faced three different referrals that ultimately resulted in four true findings, one for conduct amounting to level 6 felony escape, one for conduct amounting to level 6 felony resisting law enforcement, one for conduct amounting to class C misdemeanor operating a motor vehicle without ever receiving a license, all if committed by an adult, and the present cause, which resulted in a true finding for conduct amounting to level 5 felony robbery if committed by an adult.

[3]     The facts underlying A.W.'s true finding for robbery are as follows. On December 16, 2018, Jasmine Burch pushed her eighty-year-old, wheelchair-bound mother, Janja Jordan, into an Indianapolis discount store. When the two were between the double entrance doors, an assailant later identified as A.W. grabbed the elderly Jordan's purse, which she had on her lap, clutched in her left hand. A.W. ran out the front entrance, and Burch chased him outside. A.W. eventually dropped the purse as well as a cell phone. Police obtained a search warrant for the phone and ascertained that it belonged to A.W.'s mother. Jordan suffered injury to her left hand, on which she had recently had surgery. Burch positively identified A.W. from a photo array, and A.W. was taken into custody.

[4]     The State charged A.W. with a delinquent act that would amount to level 5 felony robbery if committed by an adult. A.W. was released on electronic monitoring on February 12, 2019. Two weeks later, he removed his electronic monitoring device, and his whereabouts were unknown. He eventually was apprehended, detained, and charged in another cause ("Cause 215") with a delinquent act amounting to level 6 felony escape if committed by an adult. The trial court set a factfinding hearing for May 23, 2019, for the current cause, Cause 215, and a third cause ("Cause 467").[1]

---

[1] Cause 467 involved five alleged acts of delinquency against A.W., three of which were dismissed and two of which resulted in true findings: one for conduct amounting to level 6 felony resisting law enforcement and the other for conduct amounting to class C misdemeanor operating a motor vehicle without ever having received a license, if committed by an adult.

[5]     On May 23, the State requested a continuance in the current cause and Cause 467. Cause 215 was litigated that day and resulted in a true finding against A.W. for escape. The State's oral request for continuance in the current cause was due to the absence of Jordan, the victim. The State explained that Jordan had notified the prosecutor's office the day before that she would not be able to attend the factfinding hearing because her husband had been diagnosed with cancer. The prosecutor stated that she believed that she could procure Jordan's attendance with a continuance of about a week. A.W. objected, requested that the court require the State to submit its motion in writing as required by statute, and requested a discharge. The trial court did not order the State to submit a written motion and instead granted its motion for continuance. At the June 25, 2019 factfinding hearing in the current cause, A.W. renewed his request for discharge, and the prosecutor explained in greater detail the circumstances that precipitated Jordan's absence from the May 23 hearing. The trial court denied A.W.'s motion for discharge, conducted the hearing, and entered a true finding for conduct amounting to level 5 felony robbery if committed by an adult.

[6]     The trial court conducted a dispositional hearing and, due largely to A.W.'s lengthy history of true findings and of violating less restrictive placements, placed A.W. in the DOC until age twenty-one, with a recommendation of a six-month term. A.W. now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – We find no reversible error in the trial court's grant of the State's oral motion for continuance.

A.W. contends that the trial court committed reversible error in granting the State's oral motion for continuance. Rulings on non-statutory motions for continuance lie within the trial court's discretion and will be reversed only for an abuse of that discretion and resulting prejudice. *Barber v. State*, 911 N.E.2d 641, 645-46 (Ind. Ct. App. 2009). Where, as here, a statute governs the grant or denial of a continuance, we apply a de novo standard, interpreting the language of the statute. *Day v. State*, 57 N.E.3d 809, 811 (Ind. 2016).

Indiana Code Section 31-37-11-8 governs circumstances in which a juvenile seeks discharge and the State seeks a continuance due to the absence of a witness:

> (a) If a child moves for discharge, the prosecuting attorney may move for a continuance of the factfinding hearing or waiver hearing because of the absence of a witness if the prosecuting attorney makes an official statement:

> (1) setting forth the name and address of the witness if known;

> (2) indicating the probability of procuring the witness's testimony within a reasonable time;

> (3) showing that the absence of the witness has not been procured by the act of the prosecuting attorney;

(4) stating the facts to which the prosecuting attorney believes the witness will testify and the prosecuting attorney's belief that the facts are true; and

(5) stating that the prosecuting attorney is unable to prove the facts specified under subdivision (4) through the use of any other witness whose testimony may be as readily procured.

(b) Upon the child's request, the court *shall* order that the prosecuting attorney's motion and official statement be made in writing.

(Emphasis added.)

[9]    The highlighted portion of the statute indicates that its language is mandatory rather than discretionary. *See Taylor v. State,* 7 N.E.3d 362, 365 (Ind. Ct. App. 2014) ("It is well settled that the use of the word 'shall' is construed as 'mandatory language creating a statutory right to a particular outcome after certain conditions are met.'") (quoting *Alden v. State*, 983 N.E.2d 186, 189 (Ind. Ct. App. 2013), *trans. denied*). A.W. objected to the State's oral motion to continue, requested a discharge, and requested that the court order the State to submit the motion in writing. The trial court was required by statute to order the State to submit its motion in writing and erred when it failed to do so.

[10]    The State contends that any error in this regard is harmless. Harmless error is error that does not affect the substantial rights of a party. *Camm v. State*, 908 N.E.2d 215, 225 (Ind. 2009). The May 23 factfinding hearing involved three separate causes against A.W. The present cause and Cause 467 were continued

as a result of the State's oral motion. The remaining cause, Cause 215, was heard that day and resulted in a true finding for escape. Having been found true, A.W. was detained in that cause, not as a result of the continuance in the present cause or Cause 467.

[11] Moreover, the continued factfinding hearing was ultimately commenced within the statutorily prescribed period. *See* Ind. Code § 31-37-11-9 (requiring court to commence continued factfinding hearing within ninety days; court shall discharge the juvenile if it does not do so within ninety days). Here, the prosecutor verbally requested a continuance due to Jordan's absence at the beginning of the May 23 factfinding hearing. At that time, the prosecutor indicated her belief that she could secure Jordan's attendance with a continuance of about one week. The hearing ultimately was commenced thirty-three days after the grant of the continuance, well within the statutory limit. Additionally, we note that of the five items of information that must be included in a written motion for continuance, per Indiana Code Section 31-37-11-8(a), Jordan's address appears to be the only one missing from the prosecutor's oral motion. A.W. was well aware of Jordan's identity and has not demonstrated prejudice regarding the lack of a written motion containing her address. The prosecutor's explanation that the elderly Jordan had notified her by phone the previous day she would not be able to attend the factfinding hearing because her husband had been diagnosed with cancer is sufficient to show that the prosecutor did not procure Jordan's absence. The prosecutor also indicated that she believed that she could secure Jordan's participation within a

reasonable time. In short, A.W. has failed to demonstrate prejudice resulting from the trial court's failure to order the State to submit its continuance motion in writing. As such, the error was harmless.

## Section 2 – The trial court acted within its discretion in ordering A.W.'s placement in the DOC.

[12] A.W. also asserts that the trial court abused its discretion in ordering his placement in the DOC. The disposition of a juvenile adjudicated a delinquent is a matter committed to the trial court's discretion, subject to the statutory considerations of the child's welfare, community safety, and the policy favoring the least harsh disposition. *J.S. v. State*, 110 N.E.3d 1173, 1175 (Ind. Ct. App. 2018), *trans. denied* (2019). We review a trial court's disposition for an abuse of discretion, which occurs if the decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable inferences that may be drawn therefrom. *Id*. In determining whether a trial court has abused its discretion, we neither reweigh evidence nor judge witness credibility. *Id*.

[13] The crux of A.W.'s argument is that the trial court chose the harshest placement option when less restrictive alternatives were available. Juvenile court proceedings are civil, not criminal, in nature. *Id*. "[T]he goal of the juvenile process is rehabilitation so that the youth will not become a criminal as an adult." *Id*. at 1175-76 (quoting *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010)). Thus, juvenile courts have a variety of placement choices. Indiana Code Section 31-37-18-6 reads,

If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:

(1) is:

(A) in the least restrictive (most family like) and most appropriate setting available; and

(B) close to the parents' home, consistent with the best interest and special needs of the child;

(2) least interferes with family autonomy;

(3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[14] Indiana Code Section 31-37-18-9(a) requires the trial court to state its reasons for the disposition chosen. This involves the trial court's issuance of written findings and conclusions concerning the child's care, treatment, rehabilitation, or placement; parental participation in the plan; efforts made to prevent the child's removal from the parent; family services offered; and the court's reasons for its disposition. Ind. Code § 31-37-18-9(a)(1)-(5).

[15] Here, the trial court's findings indicate its consideration of the statutory factors and its reasons for ordering A.W.'s placement in the DOC. For example, by age sixteen, A.W. had accumulated ten delinquency referrals, the recitation of which comprises a significant portion of the dispositional order. The nature of his delinquent conduct has been serious and sometimes violent. For example, his record includes two true findings for conduct amounting to level 5 felony battery with injury to a public safety official if committed by an adult. He has four true findings for conduct amounting to a level 6 felony if committed by an adult, i.e., resisting law enforcement, receiving stolen property, and escape, and two for misdemeanor level conduct. Most of his previous dispositions were modified due to his commission of each new offense. He had two additional causes pending in addition to the current delinquency petition, and those causes resulted in two felony true findings and one misdemeanor true finding. The trial court emphasized that less restrictive placements of home care and placement outside the home at Youth Outlook and Options had already been tried and had proven unsuccessful. Appealed Order at 4-5; *see also* Tr. Vol. 2 at 115 (court's emphasis at dispositional hearing that DOC was only option not yet tried and DOC would provide structure, security, separation, and programming).

[16] A.W. points to his high level of family support as evidence that he deserves another chance at community and structured home placement. Our review of the record leaves no doubt as to his family's strong support. At the dispositional hearing, various family members pled for mercy on A.W.'s behalf

and testified concerning their love and support for him throughout his childhood, with particular emphasis on his father's death when he was just three years old. However, the number and recent escalation of A.W.'s delinquency referrals indicate that the family's efforts, well-meaning though they are, have failed to produce more positive results for A.W.

[17] A.W. also relies on psychologist Dr. Jim L. Dalton's report as support for a less restrictive placement. Dr. Dalton reported that A.W.'s mental status and presentation had improved since his previous evaluation in 2017. Respondent's Ex. B. However, Dr. Dalton ultimately found that A.W. was an "increasing delinquency risk," had a longstanding "penchant toward elopement," and presents "some danger to others as he has been willing to violate the rights of others for his own personal gain." *Id*. Dr. Dalton explained that because A.W. "appears to present risks to the community, it is difficult to support another try at community-based services. Especially given the increase in antisocial interest and trajectory for this young man." *Id*. He ultimately concluded that the "updated assessment findings would support commitment to the [DOC]." *Id*.

[18] Simply put, the trial court did not choose the most restrictive placement in a vacuum, but rather made a measured decision representing "the least restrictive and most appropriate setting" based on A.W.'s history, community safety, and A.W.'s best interest. Appealed Order at 4. Based on the foregoing, we conclude that the trial court acted within its discretion in ordering A.W.'s placement in the DOC. Accordingly, we affirm.

Affirmed.

May, J., and Pyle, J., concur.